UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANA SCHWEER,

                        Plaintiff,

              -against-

FINN PARTNERS, INC.,

                        Defendant.
------------------------------------------------------------X

No.: 1:18-cv-01057

**COMPLAINT**

Plaintiff Dana Schweer, by and through her attorneys, Beranbaum Menken LLP, complaining of Defendant Finn Partners, Inc. ("Defendant"), hereby alleges:

## NATURE OF ACTION

1. This action is brought to remedy claims of disability discrimination, failure to accommodate, and unlawful retaliation pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), as amended by the ADA Amendments Act of 2008, and the New York City Human Rights Law, N.Y.C. Admin Code § 8-101 *et seq*. ("NYCHRL").

2. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, statutory penalties, attorneys' fees, and all other appropriate relief pursuant to federal and local law.

## JURISDICTION AND VENUE

3. On or about November 21, 2017, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the unlawful discriminatory and retaliatory acts alleged herein.

4. On December 4, 2017, Plaintiff requested that the EEOC issue her a Right to Sue letter pursuant to 29 C.F.R. § 1601.28(a)(2).

5. On January 9, 2018, the EEOC issued Plaintiff a Right to Sue letter.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 2000e-5(f)(3). This Court also has supplemental jurisdiction over Plaintiff's local law claims pursuant to 28 U.S.C. § 1367.

7. As Defendant has offices in and regularly does business within the City of New York, and because the circumstances giving rise to this action occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C.§ 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

8. Plaintiff is a female adult currently residing in New York County in the State of New York, who was employed by Defendant in the City of New York. At all relevant times, Plaintiff was an "employee" of Defendant and a "qualified individual with a disability" as those terms are defined by the ADA and NYCHRL.

9. Defendant is a corporation organized under the laws of the State of New York and headquartered at 301 E. 57th Street, 4th Floor, New York, New York 10022, and was Plaintiff's "employer" as defined by the ADA and NYCHRL.

## STATEMENT OF FACTS

10. At all relevant times, Plaintiff has suffered from severe Post-Traumatic Stress Disorder ("PTSD") as a result of being violently raped twice; once in 2005 and once in 2007.

11. In spite of this trauma, Plaintiff worked hard to build her career, and she was hired by Defendant on April 11, 2017 as a Senior Account Executive on the Corporate Social Responsibility team, reporting to Senior Partner Amy Terpeluk.

12.     Unbeknownst to Plaintiff at the time, in the six months prior to her hire, three separate young female employees – Kate Yee, Joanna Leis, and Mizuki Yakamoto – had been run off the seven-member Corporate Social Responsibility team, and all three flagged harassment by Terpeluk and Elle Jones, Finn Partners' Head of Human Resources, in their exit interviews.

13.     Management was aware of Terpeluk's behavior and considered it so serious that she was sent to sensitivity management training as a result, but her behavior did not change.

14.     In April, Plaintiff informed Terpeluk that she had a condition that qualifies for reasonable accommodation under the ADA, and Terpeluk instructed her to meet with Jones, who asked Plaintiff for medical documentation to substantiate her need for accommodation.

15.     In response to Jones's request, Plaintiff submitted a letter from her psychiatrist Dr. Ina Becker, dated May 3, 2017, stating that Plaintiff suffers from panic attacks and "complex PTSD" and identifying as potential accommodations a quiet workspace and the ability to work from home on occasion, as it was unfortunate but likely that Plaintiff would continue to suffer panic attacks in the future.

16.     Plaintiff was provided with the requested quiet workplace, but although she only worked from home 4-5 times in the 5 months she was employed by Defendant, her attempts to occasionally do so began to cause friction with Terpeluk and other supervising coworkers almost immediately.

17.     On June 21, 2017, Plaintiff wrote to Jones expressing concerns about this friction and attempting to engage in an interactive process to find a way to structure her accommodation so as to avoid any issues.

18. The very next day, June 22, 2017, rather than working with Plaintiff to structure her accommodations in a way that would work for everyone, Jones and Terpeluk met with her and informally warned her that her need for accommodation was causing a "negative perception" among Plaintiff's coworkers on Terpeluk's team.

19. During this meeting, Jones blatantly violated Plaintiff's legally-protected privacy by discussing the details of her need for accommodation in front of Terpeluk, and stated threateningly, "I haven't called your doctor to verify your accommodation, but I can." Both Jones and Terpeluk encouraged Plaintiff to disclose her need for accommodation to the team to counter their alleged "negative perception" of her, and Plaintiff reluctantly did so.

20. Over the next few months, Plaintiff suffered a health scare involving serious back pain and body numbness, which necessitated various absences for tests and treatment. She was eventually diagnosed with degenerative spine disease and myelopathy, and informed Defendant of her diagnosis on August 11, 2017.

21. Notwithstanding these significant challenges, Plaintiff was able to build impressive list of professional achievements over the spring and summer of 2017, racking up glowing accolades from Rebecca Carriero of Bloomberg and Sanette Chao, Jessica Shu, and Jessica Thorpe of Verizon.

22. On August 30, 2017, however, notwithstanding Plaintiff's demonstrably successful and praiseworthy work, Jones and Terpeluk met with her again, this time presenting her with a formal written warning alleging various "performance failures" and "conduct issues," virtually all of which were false or dramatically exaggerated. The warning went as far as accusing Plaintiff of "falsify[ing] information regarding another employee … and a medical

4

condition" for sending an email supporting a petite coworker's need for a footstool to avoid orthopedic discomfort while seated.

23. At the meeting, Jones questioned Plaintiff's need for accommodation, again threatening to call her doctor to confirm its veracity, this time standing and leaning over Plaintiff in a threatening manner. Plaintiff began crying at the end of this meeting and suffered a serious panic attack immediately thereafter, experiencing severe anxiety and physical and emotional pain and running into the office of coworker David Lieberson for comfort and support.

24. Although Terpeluk was Plaintiff's official supervisor, she only actually oversaw about 10% of Plaintiff's work prior to the last 2 weeks of Plaintiff's employment. Before that, Finn Partners executives Sakura Komiyama Amend and Brianne Chai-Onn were responsible for supervising the rest – approximately 90% of Plaintiff's workload. Despite this, they were never informed or consulted about either of Jones and Terpeluk's meetings with Plaintiff, nor was their positive feedback incorporated into Finn Partners' evaluation of Plaintiff's performance.

25. After their second meeting, increasingly fearing Jones's inappropriate and threatening behavior and not believing she could trust Jones or Terpeluk, Plaintiff immediately took the warning and all the necessary evidence to demonstrate how unjustified it was to Terpeluk's boss, Managing Partner Dena Merriam, and requested that the warning be withdrawn and that she be given a new supervisor. At this time, Merriam was sympathetic to Plaintiff and appeared very concerned about Jones's aggressive and threatening behavior. Merriam said she would speak to Jones and that Plaintiff would report to Millicent Fortunoff instead of Terpeluk.

26. The next week, however, Merriam was out on vacation, and when she returned, everything had changed. Plaintiff met with her on September 5, 2017, to follow up regarding the withdrawal of the warning and the anticipated assignment of Fortunoff as her new supervisor,

5

but at this point Merriam walked back her earlier expressions of sympathy, concern, and agreement to allow Ms. Schweer to report to Fortunoff and refused to commit to anything. Merriam also admitted that she had not spoken to Jones, as she had promised, and instead encouraged Plaintiff to confront Jones herself.

27.     Extremely concerned by this about-face, Plaintiff reached out to her therapist and neurologist to request that they submit additional letters to Defendant confirming her diagnoses and need for accommodation.

28.     Upon confirming with her doctors that the additional medical documentation had been sent, Plaintiff emailed this information and her complaints about the harassing behavior to Jones, Terpeluk, and Merriam on September 13, 2017. Emails back and forth followed, in which Jones acknowledged her inappropriate behavior, including that she should not have disclosed information about Plaintiff's accommodations to other employees, and Plaintiff requested that Jones call her psychiatrist to confirm her need for accommodation rather than continuing to question it.

29.     Again, Jones responded aggressively, inventing more rules and requirements to accuse Plaintiff of violating in attempting to have her disability accommodated. Jones even claimed Plaintiff should not share information about her own need for accommodation with other employees either; a complete reversal of what she had pressured Plaintiff to do in the meeting on June 22.

30.     Accordingly, on September 14, 2017, Plaintiff finally reached out to Merriam once again, this time asserting in an email that her ADA rights were being violated. When Plaintiff did not hear back from Merriam that day, she left the office deeply concerned about this violation of her legal rights.

31. Plaintiff's fears were confirmed at noon the very next day, September 15, 2017, when she was terminated by Jones and Merriam. Jones informed her she was supposedly being terminated for forwarding a work email to her mother, a PR professional, the night before, with an attached "confidential document" – an alleged "marketing plan" – thereby violating "the confidentiality agreement" she had signed.

32. In reality, the email in question contained Plaintiff's own evaluation of various celebrities and influencers and included no confidential or proprietary client information whatsoever. There was no attached marketing plan, merely an image file of a company logo from the body of the email that had ended up as an attachment through the forwarding process.

33. Not only was Plaintiff in compliance with the relevant policy, but even if she had violated it, there is no provision whatsoever in the handbook or the confidentiality policy for such immediate, summary termination in response to what would obviously be an inadvertent, virtually risk-free error. Moreover, given that Plaintiff had just secured a client-essential deliverable the week prior – an exclusive with The Hollywood Reporter for the team's top client, Verizon – Plaintiff's recent work performance at the time of her termination was so solid as to render Defendant's actions irrational.

34. The timing of Plaintiff's termination (literally hours after she again escalated her complaints about the unwillingness of Jones and Terpeluk to appropriately accommodate her PTSD, including by way of Jones's ongoing hostile behavior toward her), the fact that she had no prior indication that Finn Partners ever did any kind of email monitoring (and in fact had forwarded similar non-confidential work emails to family members before, as most employees at Finn Partners have done from time to time, on information and belief), and the fact that her conduct didn't even actually violate the policy in question make it clear that Plaintiff was

actually terminated for continuing to exercise and assert her rights under the ADA, in violation of the ADA and NYCHRL.

35. Instead of engaging in the interactive process explicitly required by the ADA and NYCHRL in order to explore the possibility of finding a reasonable accommodation that would meet the needs of both Plaintiff and Defendant, Finn Partners simply engaged in a retaliatory investigation of *her* emails, with the knowledge and consent of those at the highest levels of the company, and came up with the best pretextual excuse it could find to fire her on extremely short notice – less than 24 hours later.

36. As a result, in addition to losing her income and benefits, Plaintiff has also suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

**FIRST CAUSE OF ACTION:**
**ADA Disability Discrimination**

37. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

38. Defendant violated the ADA by unlawfully terminating Plaintiff's employment because of her disability, pretextually claiming that she was being terminated for allegedly violating Defendant's confidentiality policy based on conduct that did not even violate the policy in question.

39. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or

economic damages, including but not limited to loss of past and future income, compensation, and benefits.

40.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

41.     Defendant's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION:
### ADA Failure to Accommodate

42.     Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

43.     Defendant violated the ADA by failing to adequately provide Plaintiff with accommodations it had promised her based on her known disabilities.

44.     Defendant violated the ADA by refusing to adequately and in good faith engage in the interactive process.

45.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

46. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

47. Defendant's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION:
### ADA Retaliation

48. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

49. Defendant violated the ADA by terminating Plaintiff's employment in retaliation for Plaintiff's attempts to assert her rights under the ADA.

50. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

51. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

52. Defendant's unlawful and retaliatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION: 
### NYCHRL Disability Discrimination

53. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

54. Defendant violated the NYCHRL by unlawfully terminating Plaintiff's employment because of her disability, pretextually claiming that she was being terminated for allegedly violating Defendant's confidentiality policy based on conduct that did not even violate the policy in question.

55. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

56. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

57. Defendant's unlawful and discriminatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION:
### NYCHRL Failure to Accommodate

58. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

59. Defendant violated the NYCHRL by failing to adequately provide Plaintiff with accommodations it had promised her based on her known disabilities.

60. Defendant violated the NYCHRL by refusing to adequately and in good faith engage in the interactive process.

61. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

62. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

63. Defendant's unlawful and discriminatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION:
### NYCHRL Retaliation

64. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

65. Defendant violated the NYCHRL by terminating Plaintiff's employment in retaliation for Plaintiff's attempts to assert her rights under the ADA.

66. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

67. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to ongoing panic attacks, stress, humiliation, depression, embarrassment, extreme anxiety, loss of self-esteem and self-confidence, and newly-diagnosed chronic tachycardia caused by the exacerbation of her PTSD, all of which she is receiving ongoing intensive treatment for from her GP, psychiatrist, and psychotherapist.

68. Defendant's unlawful and retaliatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a. Declaring the acts and practices complained of herein to be violations of the ADA and the NYCHRL;

b. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's unlawful conduct, and making her whole for all earnings and other benefits she would have received but for Defendant's unlawful conduct, including but not limited to wages, bonuses, other lost benefits, loss of good will, and interest thereon;

      c.      Directing Defendant to pay Plaintiff front pay, to compensate her for all monetary and/or economic damages, including but not limited to the loss of past and future income, wages, compensation, seniority, and other benefits of employment;

      d.      Directing Defendant to pay Plaintiff compensatory damages, including damages for her mental anguish, denial of life's pleasures, pain and suffering, and humiliation, as well as liquidated damages;

      g.      Directing Defendant to pay Plaintiff an award of punitive damages;

      h.      Awarding Plaintiff interest on the damages awarded, the costs of this action, and reasonable attorney fees; and

      i.      Granting such other relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated:      New York, New York
                  February 6, 2018

                                              BERANBAUM MENKEN LLP

                                              By: _____
                                              Grace Cathryn Cretcher
                                              Bruce E. Menken
                                              80 Pine Street, 33rd Floor
                                              New York, NY 10005
                                              Ph: (212) 509-1616
                                              Fax: (212) 509-8088